UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TAMITHA NETTLES

                  Plaintiff,

    v.

ANDREW M. SAUL,[1] Commissioner of
Social Security,

                  Defendant.

**DECISION
and
ORDER

18-CV-06369-LGF
(consent)**

---

APPEARANCES:      LAW OFFICES OF KENNETH R. HILLER
                              Attorneys for Plaintiff
                              KENNETH R. HILLER, and
                              SAMANTHA J. VENTURA, of Counsel
                              6000 Bailey Avenue
                              Suite 1A
                              Amherst, New York 14226

                              JAMES P. KENNEDY, JR.
                              UNITED STATES ATTORNEY
                              Attorney for Defendant
                              Federal Centre
                              138 Delaware Avenue
                              Buffalo, New York 14202
                                    and
                              KATHRYN L. SMITH
                              Assistant United States Attorney
                              United States Attorney's Office
                              100 State Street
                              Rochester, New York  14614
                                    and

---

[1] Andrew M. Saul became Acting Commissioner of the Social Security Administration on June 17, 2019, and pursuant to Rule 25(d) of the Federal Rules of Civil Procedure is automatically substituted for Nancy Berryhill as the defendant in this suit with no further action is required to continue this action.

BENIL ABRAHAM
Special Assistant United States Attorney, of Counsel
Social Security Administration
Office of the General Counsel, of Counsel
26 Federal Plaza, Room 3904
New York, New York 10278
    and
BLAKELY PRIOR, and
FRANCIS D. TANKARD
Special Assistant United States Attorneys, of Counsel
Social Security Administration
Office of the General Counsel
601 E. 12th Street, Room 965
Kansas City, MO 64106, and

## JURISDICTION

On July 9, 2019, this case was reassigned to the undersigned before whom the parties consented pursuant to 28 U.S.C. § 636(c) to proceed in accordance with this Court's June 29, 2018 Standing Order. (Dkt. No. 20). The court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on motions for judgment on the pleadings, filed on January 31, 2019, by Plaintiff (Dkt. No. 12), and on April 30, 2019, by Defendant (Dkt. No. 17).

## BACKGROUND and FACTS

Plaintiff Tamitha Nettles ("Plaintiff"), brings this action pursuant to the Social Security Act ("the Act"), seeking review of the Acting Commissioner of Social Security ("the Commissioner" or "Defendant") decision denying her application for disability benefits for Supplemental Security Income ("SSI") benefits under Title II of the Act

("disability benefits"). Plaintiff, born on September 23, 1966 (R. 23),[2] has a high school education, and alleges that she became disabled on January 1, 2014, when she stopped working as a result of depression, bipolar disorder, anxiety, panic attacks, memory problems, scoliosis, back pain, pain while walking and bending, right knee injury, right knee arthritis, trouble sleeping, crying, and a fear of large crowds. (R. 210).

Plaintiff's application for disability benefits was initially denied by Defendant on February 19, 2015 (R. 97), and, pursuant to Plaintiff's request, a hearing was held before Administrative Law Judge Gretchen Greisler ("Judge Greisler" or "the ALJ"), on April 13, 2017, in Syracuse, New York, where Plaintiff, represented by Justin Goldstein, Esq. ("Goldstein") appeared and testified. (R. 23-78). The ALJ's decision denying Plaintiff's claim was rendered on May 31, 2017. (R. 15-25). Plaintiff requested review by the Appeals Council, and on March 22, 2018, the ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review. (R. 1-4). This action followed on May 16, 2018, with Plaintiff alleging that the ALJ erred by failing to find her disabled. (Dkt. No. 1).

On January 31, 2019, Plaintiff filed a motion for judgment on the pleadings ("Plaintiff's motion"), accompanied by a memorandum of law (Dkt. No. 12-1) ("Plaintiff's Memorandum"). Defendant filed, on April 30, 2019, Defendant's motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Dkt. No. 17-1) ("Defendant's Memorandum"). On May 21, 2019, Plaintiff filed a reply to

---

[2] "R" references are to the pages of the Administrative Record electronically filed by Defendant on October 18, 2018 (Dkt. 9).

Defendant's memorandum ("Plaintiff's Reply"). (Dkt. No. 19). Oral argument was deemed unnecessary.

**DISCUSSION**

A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or the decision is based on legal error. *See* 42 U.S.C. 405(g); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence" means 'such relevant evidence as a reasonable mind might accept as adequate.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000).

**A.     Standard and Scope of Judicial Review**

The standard of review for courts reviewing administrative findings regarding disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law judge's findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires enough evidence that a reasonable person would "accept as adequate to support a conclusion." *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938). When evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the

opinion supports the administrative record, the treating physician's opinion will be given controlling weight. *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d). The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence. *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§ 405(g) and 1383(c)(3). "Congress has instructed . . . that the factual findings of the Secretary,[3] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity the inquiry ceases and the claimant is not eligible for disability benefits. *Id.* The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Absent an impairment, the applicant is not eligible for disability benefits. *Id.* Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled,

---

[3] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[4] 42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920. *See also Cosme v. Bowen*, 1986 WL 12118, at * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits. *Id.* Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment. 20 C.F.R. §§ 404.1520(f), 416.920(f). *See also Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [her] past work"). If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits. 20 C.F.R. §§ 404.1520(g), 416.920(g). The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment. *Berry,* 675 F.2d at 467.

---

[4] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period. 20 C.F.R. §§ 404.1509 and 416.909.

6

In reviewing the administrative finding, the court must follow the five-step analysis and 20 C.F.R. § 416.935(a) ("§ 416.935(a)"), to determine if there was substantial evidence on which the Commissioner based the decision. 20 C.F.R. § 416.935(a); *Richardson*, 402 U.S. at 410.

In this case, the ALJ determined that Plaintiff had the severe impairments of a spine disorder, chronic ACL joint tear, a variously characterized mental impairment. and wrist pain that was not severe. (R. 17-18). The ALJ further determined that Plaintiff's impairments do not meet or medically equal a listed impairment, and that Plaintiff had the residual functional capacity to perform light work with limitations to changing positions for 10 minutes after sitting for one hour, frequent stooping and balancing, occasional crouching and climbing stairs, no crawling, kneeling, climbing ladders, ropes or scaffolds, the ability to handle simple, routine and repetitive tasks, reasonable levels of work-related stress where not involved in the decision-making process, no responsibility for the work of others, little change in daily routine or work duties and processes, no more than simple, short interaction with supervisors and co-workers or more than occasional contact with the public, work in the proximity of others on tasks not requiring working in conjunction with others, and should predominantly work with objects rather than people. (R. 20). Plaintiff does not contest the ALJ's findings at steps one through three of the disability review process but contends that the ALJ erred in evaluating Plaintiff's residual functional capacity assessment.

**E. Residual functional capacity**

Once an ALJ finds a disability claimant does not have a severe medically determinable physical or mental impairment, 20 C.F.R. § § 404.1520(a)(4)(ii), that

7

significantly limits the claimant's physical and mental ability to do work activities, *Berry*, 675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to meet the criteria established for an impairment listed under Appendix 1, the burden shifts to the Commissioner to show that despite the claimant's severe impairment, the claimant has the residual functional capacity to perform alternative work, 20 C.F.R. § 404.1520(a)(4)(iv) and prove that substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience, and training. *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980). To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they nevertheless permit certain basic work activities essential for other employment opportunities. *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities." *Id.* An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work. *Decker*, 647 F.2d at 294.

The Second Circuit requires that all complaints . . . must be considered together in determining . . . work capacity. *DeLeon v. Secretary of Health and Human Services,* 734 F.2d 930, 937 (2d Cir. 1984). Once an ALJ finds a disability claimant does not have a severe medically determinable physical or mental impairment, 20 C.F.R. § 404.1520(a)(4)(ii), that significantly limits the claimant's physical and mental ability to do work activities, *Berry,* 675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to meet the criteria established for an impairment listed under Appendix 1, the burden shifts to the Commissioner to show that despite the claimant's

severe impairment, the claimant has the residual functional capacity to perform past work, 20 C.F.R. § § 404.1520(a)(4)(iv), and to prove substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience, and training. *Parker*, 626 F.2d 225 at 231. It is improper to determine a claimant's residual work capacity based solely upon an evaluation of the severity of the claimant's individual complaints. G*old v. Secretary of Health and Human Services*, 463 F.2d 38, 42 (2d Cir. 1972). To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they permit certain basic work activities essential for other employment opportunities. *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities." *Id.* at 294.

An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work. *Decker*, 647 F.2d at 294. In addition, the Commissioner must establish that the claimant's skills are transferrable to the new employment if the claimant was employed in a "semi-skilled" or "skilled" job. *Id.* at 294. This element is particularly important in determining the second prong of the test, whether suitable employment exists in the national economy. *Id.* at 296.

In this case, the ALJ found that Plaintiff had the residual functional capacity to perform light work with limitations to occasionally lift, carry, push and pull up to 20 pounds, frequently lift, carry, pull, and push up to 10 pounds, sit and stand for four hours, walk

9

for one hour, alternate positions occasionally while staying on task, continuously reach, handle, finger, and feel, and occasionally perform all postural activities.  (R. 32, 36).

Plaintiff alleges that the ALJ's residual functional capacity assessment of Plaintiff is erroneous, as the ALJ improperly evaluated the finding of Mental Health Counselor Caponi ("MHC Caponi"), that Plaintiff had a moderate limitation to maintaining concentration and a regular schedule, mischaracterized the opinion of Yu-Ying Lin, Ph.D. ("Dr. Lin"), and the opinion of consultative examiner Kristina Luna, Psy.D. ("Dr. Luna"), that Plaintiff had a marked limitation relating to others.  Plaintiff's Memorandum at 18-21.  Defendant maintains that the ALJ correctly evaluated Plaintiff's residual functional capacity as MHC Caponi is not considered an "acceptable source" under the Act, Dr. Lin's finding that Plaintiff would be unable to perform work activities for six months falls short of the Act's requirement that claimants must be disabled for a period of up to 12 months, and the ALJ's neglect to discuss the findings of Dr. Luna is harmless as jobs listed in the Dictionary of Occupational Titles ("DOT"), upon which the ALJ relied, require no significant interaction with people.  Defendant's Memorandum at 19-25.  Defendant's motion on this issue is without merit.

With regard to Plaintiff's mental RFC, the ALJ's finding that Plaintiff is able to maintain a regular schedule, was able to perform work that included simple, short interactions with supervisors and co-workers, and work in proximity with others (R. 20), is without support of substantial evidence in the record.  In particular, on March 29, 2013, Gregory L. Seeger, M.D. ("Dr. Seeger"), completed a psychiatric medication review on Plaintiff and noted that Plaintiff reported auditory hallucinations with paranoia, significant insomnia, hearing voices constantly, moderate depression and poor

concentration. Dr. Seeger evaluated Plaintiff with rapid and pressured speech, poor concentration, fair judgment, and diagnosed Plaintiff with major depression with psychotic features, panic anxiety disorder and alcohol abuse. (R. 351).

On January 30, 2015, Kristina Luna, Psy.D., ("Dr. Luna"), completed a consultative psychiatric evaluation on Plaintiff and noted that Plaintiff was defensive, irritable, suspicious, had poor relating and social skills, strained eye contact, and was very aggressive. (R. 380). Dr. Luna evaluated Plaintiff with mildly impaired attention and concentration from anxiety, mildly impaired recent and remote memory skills from emotional distress, average cognitive functioning, fair insight, poor judgment, no limitations to her ability to follow and understand simple directions and instructions and perform simple tasks independently, moderate limitation to her ability to appropriately deal with stress, and a marked limitation to her ability to relate with others caused by distractibility and psychotic symptoms. (R. 382).

On December 19, 2014, MHC Caponi completed a Psychological Assessment for Determination of Employability form and noted that Plaintiff had moderate limitations to maintaining attention and concentration, attending to and maintaining a regular schedule. (R. 517). On February 3, 2015 (R. 615), and April 28, 2015 (R. 615), May 15, 2015 (R. 617), and May 29, 2015 (R. 619), MHC Caponi evaluated Plaintiff with homicidal ideation with violent outbursts, racing thoughts, negative ruminations, paranoia, auditory delusions, flat, labile and angry mood, and high and chronic risk factors, and noted that Plaintiff's symptoms related to the death of Plaintiff's father during childhood, being molested as a child by Plaintiff's mother's boyfriend, physical

11

abuse by Plaintiff's father during early childhood, history of rape, and victimization through kidnapping and stalking. (R. 425).

On December 13, 2016, Shanelle Slade ("Ms. Slade"), a mental health counselor at Rochester General Hospital, completed an intake assessment of Plaintiff noted that Plaintiff reported a chronic history of aggressive behaviors, reported several arrests for assault and the inability to control her emotions, a significant history of trauma and fighting, and sleeping only one hour nightly. (R. 625). Ms. Slade evaluated Plaintiff with violent behavior, moderate risk of suicide and acute violence, and a high risk of chronic violence. (R. 626). On January 5, 2017, Ms. Slade noted that Plaintiff reported only one hour of sleep each night, and a desire to treat her anxiety. (R. 617). On January 9, 2017, Ms. Slade noted that Plaintiff reported an improved mood after getting three hours of sleep. (R. 633). On March 7, 2017, Ms. Slade noted that Plaintiff reported staying in her house for 11 days and experiencing auditory hallucinations that affect Plaintiff's ability to function and desire to be around other people. (R. 642). On March 20, 2017, Ms. Slade noted that Plaintiff reported she continued to hear voices and continued isolation. (R. 648). That same day, Nurse Practitioner John Rushforth ("N.P. Rushforth"), provided medication management to Plaintiff and noted that Plaintiff reported sleeping four to five hours nightly. (R. 650-56).

The ALJ's failure to evaluate MHC Caponi's determination that Plaintiff had a moderate limitation to maintaining attention and concentration, regularly attending to a routine and maintaining a schedule results in a residual functional capacity unsupported by substantial evidence. *See* 20 C.F.R. § 4016.927(c). Inasmuch as Defendant correctly maintains that MHC Caponi, a mental health counselor, is not considered an

"acceptable medical source" for disability review purposes, Defendant's Memorandum at 26, the ALJ was nevertheless required to evaluate MHC Caponi's statements on key issues such as the severity and resulting functional effects of Plaintiff's mental impairment. *See Barrett v. Colvin*, 211 F.Supp.3d 567. 582 (W.D.N.Y. Sept. 30, 2016) (citing *Monette v. Astrue*, 269 Fed. App'x. 109, 113 (2d Cir. 2008) (opinions from sources not deemed acceptable medical sources should be evaluated on key issues like impairment severity and functional effects)). Significantly, MHC Caponi provided counseling to Plaintiff from December 19, 2014 (R. 517) until May 29, 2015 (R. 425), during which time Plaintiff consistently reported hallucinations, hearing voices, violent outbursts, paranoid ideation, and delusions of bugs crawling on her for the previous eight month period (R. 614-19), sleeping two hours daily (R. 615), hypervigilance and self-isolation (R. 617). Such evidence supports MHC Caponi's opinion that Plaintiff had a moderate limitation to maintaining concentration and attention regularly attend to a routine, and maintain a schedule and undermines the ALJ's finding that Plaintiff can handle simple, routine and repetitive tasks and reasonable stress-related work decisions and short interactions with supervisors and co-workers. (R. 20). The ALJ's error in evaluating MHC Caponi's findings thus requires remand. Upon remand, the ALJ should evaluate MHC Caponi's treatment findings in accordance with the requirements of 20 C.F.R. § 416.927(c), and provide a determination whether MHC Caponi's finding that Plaintiff had a moderate limitation to maintaining attention and concentration and the ability to regularly attend to a routine and maintain a schedule is supported by substantial evidence in the record. Plaintiff's motion on this issue is therefore GRANTED.

Plaintiff further contends that the ALJ mischaracterized Dr. Lin's opinion that Plaintiff would be off task ten percent of each workday, and that Dr. Lin's opinion failed to include an assessment of Plaintiff's abilities. Plaintiff's Memorandum at 18-19. Defendant maintains that the ALJ properly afforded less weight to the findings of Dr. Lin, as Dr. Lin examined Plaintiff on only one occasion, and that Dr. Lin's opinion that Plaintiff was unable to work for six months supports a finding that Plaintiff's disability does not meet durational requirement of being disabled for 12 months. Defendant's Memorandum at 20. Defendant's argument on this issue is without merit.

Dr. Lin completed an examination of Plaintiff on April 12, 2016, and, consistent with the findings of MHC Caponi, found Plaintiff exhibited difficulty concentrating during conversation, abnormal recent and remote memory skills, poor insight and judgment (R. 543), a moderate limitation to Plaintiff's ability to perform complex tasks independently, maintain attention and concentration for rote tasks, regularly attend to a routine and maintain a schedule, maintain basic standards of hygiene and grooming, and use public transportation. (R. 544). Although Defendant correctly maintains that Dr. Lin's finding that Plaintiff would be unable to perform any activities other than treatment and rehabilitation for six months falls short of the requisite durational period to be deemed disabled, Defendant's Memorandum at 20, substantial evidence supports that Plaintiff's mental impairment continued for more than a year after Dr. Lin's evaluation of Plaintiff on April 12, 2016. The ALJ's disability decision on May 31, 2017, was filed more than 12 months following Dr. Lin's findings, such time which afforded the ALJ with ample opportunity to re-contact Dr. Lin to provide a determination as to whether Plaintiff remained incapable of functioning outside of a therapeutic setting. Significantly,

Plaintiff's alleged onset date of disability is January 1, 2014. (R. 15). Dr. Lin's opinion that Plaintiff was unable to function outside of a therapeutic setting for six months following April 12, 2016, is clearly irrelevant to any finding of disability prior to that date. Plaintiff continued to suffer hallucinations on December 13, 2016 (R. 624), January 5, 2017 (R. 629), January 9, 2017 (R. 632), February 1, 2017 (R. 637), and March 20, 2017 (R. 647), and on March 7, 2017 (R. 642), reported that she remained in her home for 11 days. Such evidence supports that Plaintiff remained disabled long after Dr. Lin's examination of Plaintiff on April 12, 2016. The ALJ's determination to afford less weight to Dr. Lin's opinion is thus without substantial evidence and requires remand. Upon remand, the ALJ should recontact Dr. Lin to assess whether Plaintiff remained incapable of functioning outside of the therapeutic setting after April 12, 2016, and provide a new finding on the weight afforded to Dr. Lin's opinion. Plaintiff's motion on this issue is therefore GRANTED.

As Plaintiff further contends, Plaintiff's Memorandum at 20-21, the ALJ's failure to include Dr. Luna's finding that Plaintiff had a marked limitation relating adequately with others in Plaintiff's residual mental functional capacity assessment is not supported by substantial evidence. Significantly, in contrast to Dr. Luna's assessment, the ALJ included a limitation to Plaintiff's ability to work that does not require more than simple, short interactions with supervisors or co-workers, more than occasional contact with the public and work in proximity with others that dos not require working in conjunction with others and working with objects rather than people. Upon the ALJ's compliance with the undersigned's foregoing instructions for remand, Discussion, *supra*, at 13-15, the

ALJ should provide an updated mental RFC assessment of Plaintiff including Plaintiff's ability to work with supervisors and co-workers.

With regard to the ALJ's physical RFC assessment of Plaintiff, the ALJ included as limitations that Plaintiff be able to change positions for 10 minutes after sitting for one hour, frequent stooping and balancing, occasional crouching and climbing stairs, no crawling, kneeling, climbing ladders, ropes or scaffolds, the ability to handle simple, routine and repetitive tasks, reasonable levels of work-related stress where not involved in the decision-making process, no responsibility for the work of others, little change in daily routine or work duties and processes, no more than simple, short interaction with supervisors and co-workers and occasional contact with the public, work in the proximity of others, tasks that do not require working in conjunction with others and predominantly involves working with objects rather than people. (R. 20). Plaintiff's contention that the ALJ's physical RFC determination should have included the findings of Nurse Practitioner Habermacher ("N.P. Habermacher"), is also correct. As indicated in the foregoing, Discussion, *supra*, at 13, although not considered an "acceptable medical source" under the Act, the ALJ is required to evaluate N.P. Habermacher's findings on key issues such as the severity and resulting functional effects of Plaintiff's physical impairment. Defendant's contention that the ALJ's physical RFC assessment that Plaintiff is capable of sedentary work necessarily includes N.P. Habermacher's findings on Plaintiff's imitations to walking, standing, lifting, and bending is error.

Significantly, the ALJ's physical RFC assessment of Plaintiff included "light" work (R. 23-24), such work that requires "a good deal of walking or standing, or . . . involves sitting most of the time." *See* 20 C.F.R. § 404.1567(b). Upon remand, the ALJ should

include an evaluation on the functional effects set forth by N.P. Habermacher on Plaintiff's ability to perform work, and whether such limitations comport with Plaintiff's ability to perform light work. The ALJ's finding that Plaintiff is able to perform light work is thus without support of substantial evidence in the record. Plaintiff's motion on this issue is GRANTED.

Mindful of the often painfully slow process by which disability determinations are made, the Second Circuit instructs that some evaluation of relative hardship to a claimant of further delay should be considered, *Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004), district courts may therefore "when appropriate set a time limit for action by the administrative tribunal, and this is often done." *Zambrano v. Califano,* 651 F.2d 842, 844 (2d Cir. 1981) (citing cases). *See also Michaels v. Colvin*, 621 Fed.Appx. 35, 41 (2d Cir. Aug. 14, 2015) (directing upon remand for further fact-finding at step five that given eight years had elapsed since the plaintiff filed for disability benefits, the further administrative proceedings were to be completed within 120 days, with the Commissioner's final decision to be rendered within 60 days of any appeal by the plaintiff from the ALJ's decision, and citing *Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004) (imposing time limit on remand where "the past delay is of such magnitude – years – that a time limit is imperative") *as amended on reh'g in part*, 416 F.3d 101, 106 (2d Cir. 2005) (providing that if deadlines for further administrative proceedings at the fifth step, on which the Commissioner bears the burden of proof, are not met, "a calculation of benefits owed [plaintiff] must be made immediately)).

Plaintiff filed her application for disability on October 20, 2014. (R. 15). As it has been nearly five years since Plaintiff first filed her application for disability, further delay

for remand is a hardship this Plaintiff should not bear.  The Commissioner's remand order should therefore be completed within 120 days of this Decision and Order.  *See Dambrowski v. Astrue,* 590 F.Supp.2d 579, 588 (S.D.N.Y.) (imposing a time limit of 120 days for subsequent proceedings when five years had passed since Plaintiff filed his application).

## CONCLUSION

Based on the foregoing, Plaintiff's motion (Doc. No. 12) is GRANTED; Defendant's motion (Doc. No. 17) is DENIED, and the case is Remanded to the Commissioner for further administrative proceedings.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:	September 30th, 2019
	Buffalo, New York